May it please the Court, Eric Multop on behalf of Appellant John Hildebrand. I'd like to emphasize three points in this argument. First is, I'd like to emphasize the State's unreasonably negative characterization of the impeachment evidence that could have been presented in relation to the complaining witness in this case. I'd like to emphasize the State's unreasonable inflation of the impeachment value, pardon me, of the incriminating value of the pretext telephone call that occurred after the complaint was made. And finally, I'd like to emphasize that putting these two factors together, that there is an essential need for an evidentiary hearing in this case to fairly resolve the habeas corpus claims. With respect to the State's characterization, State court's characterization of the potential impeaching value that could have been derived if trial counsel had investigated the numerous lawsuits that the complaining witness had been in prior to her charge against Dr. Hildebrand, we have an unsupportable complaint against Dr. Bernstein. Well, when you say it's unsupportable, what we know is that the lawyer that she hired filed a complaint and it was never served, and then it was shortly thereafter voluntarily dismissed, right? That's one thing we know about it. Okay. Well, what's so – so she says, would you ever sue? And I guess she said no. Well, first of all, it wasn't served, so, you know, we can be technically – I guess it was filed, it was never served. So what's so impeaching about that? She had to go to the attorney and say that I was woefully disfigured by Dr. Bernstein in this cosmetic surgery. And it turns out that there's nobody in her household, out of her household, that ever saw any such disfigurement. Well, she had some surgery, apparently. Yes. And you can't have a surgery without leaving some scar, and whether it's disfiguring or not, I guess, is a matter of opinion. Well, Your Honor, it's also a matter of fact, whether – right now, without benefit of an evidence you're hearing, we don't have a record at which her doctor, her nurses, her roommates, her boyfriend could testify as to whether there was ever any scar. No, I'm just saying, okay, but whether she was scarred or not, in her opinion, beyond what she should have been is kind of her own judgment, and it's hardly impeaching. Well, no, we're kind of arguing as if – there was a jury over here that – No, I'm saying you've got to come up with something to show that this would have changed the result of this criminal trial. Okay. How about – let's move on, then. In her deposition, in the Thrifty Rite Aid case, the slip and fall case, just a year before she made this claim, she was asked in the course of the deposition, have you ever filed any other lawsuits? And they went in great detail. Are you including workman's compensation? No. She said, well, just one lawsuit I filed for a traffic accident way back in the 80s. So Dr. Bernstein's – the lawsuit she filed against Dr. Bernstein was omitted from her answer to this question. The state court said, well, who knows? Maybe this was an innocent misrecollection type of thing. But without an evidentiary hearing, it's unfair, it's an unreasonable determination of the facts for the state court to impose, without benefit of any actual trier of fact, the least impeaching possible value to that particular false statement. There's no question it's a false statement. Then we get on to this very curious aspect of her deposition where she denied, during the previous three years, having anybody else living in her household. Now, I'm guessing that if this Court gave a pop quiz to the audience in this room, people would be pretty darn accurate in determining, in stating who was the member of their household for the prior three years. So you're referring to the deposition? I am. And the question was asked, something along the lines of who's living – was anyone living in your household? And then the lawyer butted in and answered. And then she responded. And it's hard to tell whether she's responding to the lawyer. And then the two lawyers are starting to snipe at each other. Is that the colloquy we're talking about? That's the colloquy we were talking about. But actually, it's very easy to determine what they were talking about because the attorney for the defendant got into one of these – got into it a little bit with the lawyer for the plaintiff and said, sorry, counsel, but your client has already answered the question. So from the person who's on the scene, the closest observer of how that interchange occurred, it was Ms. Letterman who said, no, nobody was living with me. So that's the – if there was any ambiguity, the attorney presumably would have said, well, your client didn't necessarily answer the question, so let's get to it. Let's make her answer it. Now, the real – so what would happen at an evidentiary hearing when Ms. Letterman was asked, did you answer that question, yes or no? And she says, she'll have an answer. And it's going to be material for impeachment because there was an – there's also some secondary gain to be gotten from that false denial within the course of the 50 Rite Aid lawsuit. Denies having other people living in her house. This was right after the accusation of child molesting against one of the homeowners. And so her denial that anybody lived in her household would have deferred, deterred, otherwise put the defense attorney off any path of investigation. And finally, during the same period, a year before the charges in this case, she falsely denied on a bankruptcy petition obtaining any rent from the people who – from one of the men who was living in her house. Counsel, this case comes to us in the posture of an ineffective assistance of counsel claim. Is that correct? So then we have to determine whether or not the determination that there was no ineffective assistance of counsel is contrary to or an unreasonable application of Supreme Court law, right? Yes. So these items you're delineating, would you tell us how the court's ruling was contrary to Strickland in the context of the counsel perhaps deciding not to present this evidence? Well, first of all, Your Honor, there are a couple of implicit questions in there also. Counsel never decided not to present this evidence because counsel didn't investigate the evidence to know what there was available. Okay. Unreasonable in failing to investigate further. Yes. That I guess would be the rubric that we're pursuing. It's unreasonable to investigate the content of a complaining witness's statements in a flurry of lawsuits within a year prior to the accusation against a particular criminal defendant, particularly where the available information to counsel, he knew of the lawsuits, that they existed because his investigator had done a file search, that there may have been false charges. She may have been a plaintiff looking for ---- Well, wouldn't it be reasonable for counsel to focus on directly defending the allegations as opposed to looking at collateral matters? Well, because it's not at all collateral. Looking at California Evidence Code Section 780E, a witness's character for honesty and veracity of their opposites is a focus for impeachment. It's one of the eight big ones that the evidence code directly acknowledges. Okay. Let's go to the second prong. How would this have affected the outcome in view of the tape and the other witnesses who testified regarding the pretty similar misconduct of the defendant? How can a prejudice be shown? Your Honor, I've got a number of answers for that one. And there's actually quite a list. I'm hoping to not overlook any of them. The first is that there was an acquittal as to the other complaining witness for which there was a criminal charge. Their trial counsel pointed out reasons why each of the other witnesses dating back to the 80s had some axe to grind, some grudge, some reason why they weren't to believe, to be believed. So what it comes down to is the word of Kathleen Letterman versus whether her testimony proved the case beyond a reasonable doubt. And there was no extrinsic impeachment of her. Counsel did impeach her with a number of inconsistent statements she'd made to her mother, to the police, to the board of medical examiners about how the incident occurred. So counsel did what he could with the inconsistent statements in the context of the case. Counsel tried to get some larger impeachment, call it macro impeachment, to show that she was not a trustworthy person. But the judge ruled that evidence inadmissible. That's the evidence that she denied having a sexual relationship with this man, Liashchenko. That was ruled inadmissible. But it shows that counsel would have liked to, was trying to get impeaching evidence that showed that Ms. Letterman was in fact a liar overall. Now, here we've got at least four incidents in the lawsuits within the year prior to her charge against Dr. Hildebrand that suggest that she had a character defect which involved making false statements. Was this defense of counsel appointed or retained? It's probably on the record somewhere. It's retained. It's retained. Yes. You're saying his own lawyer that he retained was ineffective? The documents? That's exactly the claim here, Your Honor. And, you know, the law is clear that the fact that the law... I'm aware of that, but that's what he's saying. Okay. I just was wondering about that. I'm not too clear on what you want the evidence you're hearing to be about. Okay. If it's remanded. Fair enough. The two major things that the Court has pointed out, and it all boils down to prejudice, and the two aspects of prejudice are how impeaching would the false statements in the lawsuits have been? How impeaching would Joe Liashchenko's testimony that she had a character defect, that she was a liar, be? And we need an independent trier of fact to be able to listen to these witnesses, watch Ms. Letterman react to questions about her false statements, and see whether she had an innocent explanation for making multiple false statements under oath, or whether it made her implicitly or explicitly look like a person with a credibility character defect. So you want the magistrate or district judge to retry the State case with the evidence you think ought to have been in there and make a judgment about what the jury would have done? That's basically what almost always happens in an IAC evidentiary hearing. Because we have cases, the cases we cited, often I cited three cases in which this Court remanded for the sole purpose of a hearing with respect to the prejudice from the ineffective assistant, ineffective assistants. The other thing that we would like an evidentiary hearing on relates to the pretext tape, tape-recorded call. And I assume that everybody in the Court has, you know, read that with some degree of scrutiny. And the point I want to emphasize with respect to that is, who was best suited, situated, to bring out every incriminating nuance in that tape? Kagan. Counsel, but didn't the jury hear that evidence and make a determination regarding what the content of the tape was and what the import of the tape was? That was all tried to the jury, wasn't it? Well, that's right. Tried to a draw, Your Honor, too, with respect to the tape. To a draw? A draw. Your Honor, if I may, if you review, which I did into the late hours last night, the prosecutor's argument relating the incriminating import of the tape. That's at ER 78 to 83, on and on and on about each phrase and whether it's in a tacit admission or not. Then the defense attorney argues the tape, ER 207 to 219, on and on and on. We have these two skilled advocates pounding on this tape, and nobody's scoring any particular points. I don't understand how you can say that. Your guy lost. Your guy was convicted. Our guy lost, but not necessarily because of the tape, because it's an unfair characterization that the tape is a slam-dunk incriminator. Well, I mean, that's Judge Watson's question. Okay. The jury heard the tape. They heard these two arguments, and they convicted your guy. Okay. What they didn't hear, what they didn't hear was that Katherine Letterman was a congenital liar, and she proved it in her life.  And here's what I'm saying here, if I may, because, if I may, refer the Court to ER 91. Here's the prosecutor's argument to the jury. No stone has been left unturned to attack these women. No stone has been left unturned. No question has been left unasked. So what the case went to the jury with conflicting inferences being drawn from the pretext tape. Did the doctor testify? No. But now you want to go back and have an evidence hearing where he does testify. Yes. And here's the reason, Your Honor. Here's the reason. A fair characterization, a reasonable characterization of the pretext tape would be that it was kind of a Rorschach test at best. Guilt or innocence is in the eye of the beholder. Conflicting inferences could have been drawn. Based on that, trial counsel made a determination not to call the defendant. Now the State court has elevated that pretext tape to some mythical status of a slam dunk. Now, with respect to whether it's really prejudicial or not, there's a ton of context, 10 years' worth of medical treatment that will elucidate whether that ought to be treated as some kind of apotheosis of an incriminating statement or whether it's an accommodation that a conscientious doctor would make to, he would never say this about a patient, but a kind of neurotic, hypochondriac patient who calls up with a bizarre complaint. I realize he didn't have to testify, but if he wanted to explain that, he could have taken a stand and explained it. He had no reason to at trial, Your Honor. There was no incentive to because the parties recognized that the tape was subject to conflicting inferences. It wasn't that ---- But that's the chance you take. You know, the jury hears all of the evidence, and you take the chance that the jury is going to believe the other person if you don't testify. So now in hindsight, he wants to testify because the verdict came out against him. No, Your Honor. I'm sorry. I'm going to have to say that that's not the issue here. He took his chances at trial based on his view of the state of the evidence. On habeas, the State court has made a characterization of the import of the impeaching evidence that just belies credulity. And we want to go back to the magistrate and show the magistrate that that was an unreasonable characterization of the incriminating import of the tape. That's fair game for a hearing on the prejudice strickling crime. Now, Your Honor, are you going to address the California Evidence Code Section 1108 and the corresponding jury instruction, or do you just submit that on your brief? Submit that on our brief. Okay. And I would like to reserve four minutes for rebuttal unless the Court has any other specific questions right now. I do have a question about that. Yes. Were the claims about the California Evidence Code Section 1108 and the corresponding jury instruction, CALJIC 2.50.01, exhausted in the State court? Yes. They were raised in the petition in the highest level that a misdemeanor appeal can be taken. Where were they raised? They were raised in the at the highest level in the court of appeal. And where in the record is that, that those specific claims about California Evidence Code Section 1108 and 2.50.01, where is that in the record that it was raised? Your Honor, maybe I can find that in the record while the Attorney General is arguing. Why don't you tell us where that is in the record? You can step over while the Attorney General comes up. Thank you, Your Honor. Thank you. Speaking of which, Mr. Johnson? Yes. Do I recall correctly you did not file a response brief? I filed a response brief. Why don't you come to the podium, please? And you're Mark Johnson of the Attorney General's office? Yes, Your Honor. Good morning, and may it please the Court. To answer your question, I believe that this, that the district court's resolution of this case more than adequately addressed all of the claims in appeal, and so I opted not to file a brief. The Court ordered me to, and so I did. Well, you filed a letter brief. You didn't file the proper brief. Yes. We wanted to call your attention to Federal Rule of Appellate Procedure 31C that says when the appellee fails to file a brief, they're not to be heard at argument. And in consultation with the other judges, we're going to invoke the rule unless either of the judges has questions of you. We also, in a friendly way, wanted to tell you that, you know, the district judge here granted a certificate of appealability, which means that he determined there was something debatable to talk about, and when you don't file a brief, it makes our job much more difficult. And I would urge you not to do that again. Judge Bertelsman, any questions? No. I think the record's clear. No questions. Okay. Thank you very much. Thank you. Did you find that in the record? Your Honor, with respect to your specific question, that's not in the materials that I brought to court this morning. I'd be more than happy to submit a letter brief to the Court within three court days. Wouldn't that be a fair question that you would anticipate? Wouldn't that be a question that you might anticipate that a court might ask you regarding the proceedings below? Not really, because it was not raised below. That's my point. Was it raised below? I'm sorry. Yes, it was litigated below, and that was not a basis for rejecting the ---- Wasn't that in your brief? Wasn't that one of the arguments in your brief? Yes. Okay. Well, wouldn't it be fair to be prepared to answer questions on issues you've raised in your brief? Certainly it is. Certainly it is, Your Honor. And I was focused on substance rather than procedural issues that weren't a basis for the magistrate judge's ruling in the district court's order. So if I was unprepared on that point, I apologize. All right. Don't file anything unless we direct you to. Understood, Your Honor. Your Honor, I'm asking the Court to take a realistic and common-sense view of the evidence and apply the Ninth Circuit law relating to when a defendant is entitled to an evidentiary hearing and issue an order directing that the district court hold one in this case. Unless there are other questions, I'm prepared to submit. Thank you. Thank you very much. The case is submitted. Thank you very much.
judges: Silverman, Rawlinson, Bertelsman